UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA H.,[1]<br><br>                    Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,[2]<br><br>                    Defendant. | Case No.:  24-cv-2223-WQH-MMP<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFF'S MERITS BRIEF**<br><br>[ECF No. 14] |

Angela H. ("Plaintiff") appeals the final decision of the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. ECF No. 1, 14. Plaintiff brings this appeal pursuant to 42 U.S.C. § 405(g), asserting the Administrative Law Judge ("ALJ") failed to properly credit Plaintiff's subjective statements. ECF No. 14.

---

[1] In accordance with Civil Local Rule 7.1(e)(6)(b), the Court refers to all non-government parties by using their first name and last initial.

[2] Frank Bisignano is the current Commissioner of Social Security and is automatically substituted as the defendant pursuant to Federal Rule of Civil Procedure 25(d).

This matter comes before the Court for a Report and Recommendation on Plaintiff's Merits Brief. ECF No. 14. Defendant filed a Responding Brief, and no reply brief was filed. ECF No. 16.

After a thorough review of the parties' submissions, the administrative record, and the applicable law, and for the reasons set forth below, the Court **RECOMMENDS** the District Judge **REVERSE** the final decision of the Commissioner of Social Security and **REMAND** the matter for further administrative proceedings consistent with this opinion under sentence four of 42 U.S.C. § 405(g).

## I.    BACKGROUND

### A.    General Background

In 2021, Plaintiff was thirty-nine years old with an eleventh-grade education. Administrative Record ("AR") AR 71, 101. Plaintiff's alleged impairments included fibromyalgia, liver disease, anxiety, depression, growths on her carotid artery, and thyroid issues. AR 72, 98. Plaintiff alleges her medical impairments arose after she contracted COVID-19 and was hospitalized in 2020. AR 39. Plaintiff worked as a receptionist at a medical office until around July 2021, when she alleges she became disabled and unable to work as a result of combined physical and mental impairments. AR 381.

### B.    Procedural History

On November 1, 2021, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, alleging a disability onset date of July 2, 2021. AR 290–99, 300–04. The claims were denied initially on January 31, 2022, and upon reconsideration on April 18, 2022. AR 71–96, 97–126. Plaintiff filed a written request for a hearing on May 27, 2022. AR 145–46.

24-cv-2223-WQH-MMP

On March 20, 2024, the ALJ conducted a telephonic hearing at which Plaintiff, represented by her attorney, appeared and testified. AR 30–55.[3] An impartial vocational expert also testified. On June 21, 2024, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. AR 10–21.

The Appeals Council denied Plaintiff's request for review. AR 1–6. Accordingly, the ALJ's decision dated June 21, 2024 is the final decision of the Commissioner of Social Security. *See* 42 U.S.C. § 405(h).

Plaintiff timely appealed the Commissioner's decision to this Court for federal judicial review. ECF No. 1.

## II.    SUMMARY OF ALJ'S FINDINGS

### A.    The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled, and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i) and (b); *see also* 20 C.F.R. § 416.920(a)(4)(i) and (b).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least twelve months; if not, the claimant is not disabled, and the claim is denied. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 404.1509 (setting forth the twelve-month duration requirement); *see also* 20 C.F.R. §§ 416.920(a)(4)(ii) and (c), 416.909.

---

[3] Two prior hearings were convened on April 18, 2023 and July 11, 2023. After consulting with Plaintiff, the ALJ postponed the hearings for various reasons including for Plaintiff to obtain a representative at the hearing. AR 56–63, 64–70.

24-cv-2223-WQH-MMP

If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed, and benefits are awarded. 20 C.F.R. § 404.1520(a)(4)(iii) and (d); *see also* 20 C.F.R. § 416.920(a)(4)(iii) and (d).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation process. 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform her past work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Therefore, the ALJ must determine the claimant's RFC before moving to step four.

The RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It reflects the most a claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1); SSR 96-8p, 1996 WL 374184, at *1 ("RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*."). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of her impairments—even those are not severe—and must assess her "work-related abilities on a function-by-function basis[.]" SSR 96-8p, 1996 WL 374184, at *1; *see* 20 C.F.R. § 416.945(a)(1)–(2) and (e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective."). An RFC determination must be based on "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). A court must uphold an ALJ's RFC assessment when "the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). An ALJ errs when he provides an incomplete RFC that ignores or discounts

24-cv-2223-WQH-MMP

"significant and probative evidence in the record favorable to [the plaintiff's] position." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step four of the sequential process, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled, and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(iv) and (f)–(g); *see also* § 416.920(a)(4)(iv) and (f)–(g).

At step five, the burden then shifts to the ALJ to establish the claimant is not disabled because there is other work existing in "significant numbers in the national economy" the claimant can do, considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1560(c), 416.960(c); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1). The ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all the claimant's physical and mental limitations supported by the record or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. *Id*. The determination of this issue comprises "the fifth and last step" in the sequential analysis. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**B.      The ALJ's Application of the Five-Step Process**

At step one, the ALJ found Plaintiff "ha[d] not engaged in substantial gainful activity since July 2, 2021, the alleged onset date." AR 13.

At step two, the ALJ found Plaintiff had the following severe impairments: "fibromyalgia; airway disease, [and] status post-COVID pneumonia." *Id*. The ALJ found Plaintiff had other "non-severe impairments of obesity, hyperlipidemia, migraine, left wrist pain, dysphagia, goiter, gastroesophageal reflux disease ('GERD'), mild cervical degenerative disc disease, mild carpal tunnel syndrome ('CTS'), adjustment disorder, and post-traumatic stress disorder ('PTSD')." *Id*. The ALJ reasoned Plaintiff's "mental impairments of adjustment disorder and PTSD, considered singly and in combination, do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." *Id*. Applying the psychiatric review technique for evaluating mental impairments, the ALJ determined Plaintiff had mild limitations in the

24-cv-2223-WQH-MMP

areas of "understanding, remembering or applying information," in "interacting with others," and in "concentrating, persisting or maintaining pace," and she had no limitation in the area of "adapting or managing oneself." AR 13–14.

At step three, the ALJ found Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" noting in particular she considered Listings 3.01 (respiratory system), 3.02 (chronic respiratory disorder), 3.03 (asthma), as well as obesity under SSR 19-2p and fibromyalgia under SSR12-2p.[4] AR 14.

---

[4] SSA 12-2P establishes fibromyalgia may be a severe medical impairment for purposes of determining disability. *Revels v. Berryhill*, 874 F.3d 648, 652 (9th Cir. 2017); *see also Titles II and XVI: Evaluation of Fibromyalgia*, SSR 12-2P. 2012 WL 3104869 (July 25, 2012). The Ninth Circuit has recognized SSR 12-2 provides two sets of criteria for diagnosing fibromyalgia "based on the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria." *Revels*, 874 F.3d at 656 (citing SSR 12-2P, 2012 WL 3104869, at *2).

> Pursuant to the first set of criteria, a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has tenderness in at least eleven of eighteen specified points on her body; and (3) there is evidence that other disorders are not accounting for the pain. Pursuant to the second set of criteria, a person suffers from fibromyalgia if: (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is evidence that other disorders are not accounting for the pain.

*Id.* at 656–57 (citing SSR 12-2P, 2012 WL 3104869, at *2–3) (internal citation omitted).

6

24-cv-2223-WQH-MMP

The ALJ found Plaintiff had the RFC to perform a range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with certain exertional, postural, and environment limitations as follows:

> [S]he can lift and carry up to 10 pounds occasionally, can stand and walk with normal breaks for about 2 hours in an 8-hour workday, and can sit with normal breaks for about 6 hours in an 8-hour workday. She can never climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs, and can occasionally stoop, kneel, and crouch, but never crawl. She can frequently bilaterally handle, finger, and reach, can occasionally bilaterally reach overhead, and can occasionally push/pull with the upper and lower extremities. She must avoid unprotected heights, workplace hazards, and moving machinery, cannot work with vibrations, and can have no more than moderate exposure to heat, cold, or humidity. She cannot perform work outdoors or in very bright lighting.

AR 14–15. In reaching this conclusion, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms" but her "statements concerning the intensity, persistence and limiting effects" were "not entirely consistent with the medical and other evidence in the record[.]" AR 15. The ALJ also found unpersuasive the opinions of state agency medical consultants, T. Bawa, M.D. and T. Dupont, M.D., who both opined Plaintiff "could perform a range of work at the light exertional level, occasionally climb ramps and stairs, and could frequently balance, stoop, kneel, crouch, and crawl." AR 19. The ALJ reasoned neither opinion gave "proper weight to the claimant's reporting of limitations" specifically noting Plaintiff's testimony she had "difficulty breathing and constant overall pain with fatigue, such that even moving hurts, and that she has photosensitivity that can cause headaches." *Id.* The ALJ also found the opinions inconsistent with the overall record including subsequently submitted objective evidence. *Id.* The ALJ highlighted in January 2024, Plaintiff was observed to have "very classic" features of fibromyalgia, symptoms consistent with reactive airway disease, and respiratory issues post-COVID. *Id.* The ALJ also cited imaging of Plaintiff's neck in February 2024 showing cervical degenerative disc disease. *Id.* With respect to Plaintiff's mental impairments, the ALJ found persuasive the opinion of state agency psychological

24-cv-2223-WQH-MMP

consultant, Joseph Cools, Ph.D, who opined Plaintiff's mental impairments were non-severe. AR 19.

At step four, the ALJ determined the claimant was capable of performing her past relevant work as a medical receptionist (DOT 237.367-038). The ALJ relied on the vocational expert's testimony Plaintiff's past relevant work was "generally performed at the sedentary exertional level, and actually performed at the light exertional level," and a person with Plaintiff's RFC could perform the past relevant work as generally performed. AR 20.

Accordingly, the ALJ determined Plaintiff was "not under a disability, as defined in the Social Security Act, from July 2, 2021" through June 21, 2024, the date of the ALJ's decision. AR 21.

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if "it is either not supported by substantial evidence or is based upon legal error." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (quoting *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018)).

The substantial-evidence standard requires a reviewing court to "look to the existing administrative record and ask whether it contains sufficient evidence to support the agency's factual determinations." *Id.* (citing *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)) (citation modified). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103 (citation modified). The standard requires "more than a mere scintilla, but less than a preponderance." *Revels*, 874 F.3d at 654 (citation omitted). "Overall, the standard of review is highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Rounds v. Comm'r*, 807 F.3d 996, 1002 (9th Cir. 2015), as amended). Thus, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's

24-cv-2223-WQH-MMP

conclusion that must be upheld." *Woods*, 32 F.4th at 788 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

A reviewing court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). The ALJ is responsible for resolving conflicts in medical testimony as well as any ambiguities in the record. *Id*. at 1010 (citation omitted). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id*.; *see also Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024) ("Courts can consider only the reasons the ALJ asserts.") (citation modified).

A court may also reverse the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the ALJ committed legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record the ALJ's error was inconsequential to the ultimate nondisability determination." *Id*. at 932 (citation modified) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).

**IV.   ANALYSIS**

Plaintiff asserts the ALJ failed to present a clear and convincing reason to reject her symptom testimony. ECF No. 14 at 3. Plaintiff contends the ALJ provided a synopsis of the medical records without identifying any specific reasons to discount Plaintiff's testimony. *Id.* at 6. Plaintiff also asserts "given her testimony regarding her symptoms and the medical records supporting her fibromyalgia diagnosis, it is unclear from the ALJ's decision how [Plaintiff's] testimony is inconsistent with the medical record." *Id.* at 7.

Defendant maintains the ALJ's reasoning is clear and convincing and supported by substantial evidence. ECF No. 16 at 5. Defendant contends the ALJ's RFC determination finding Plaintiff could perform sedentary work with additional restrictions accounted for

24-cv-2223-WQH-MMP

some of Plaintiff's alleged limitations, and the ALJ reasonably found the rest of Plaintiff's allegations were not consistent with the medical and other evidence. *Id.* at 4.

### A.    Plaintiff's Testimony During the March 20, 2024 Hearing

During the March 20, 2024 hearing before the ALJ, Plaintiff testified her health had gone "really far downhill" since she contracting COVID in October 2020. AR 39. She stated she had been hospitalized due to COVID on multiple occasions. AR 41–42.

Plaintiff reported her "bones [were] in constant pain" and described experiencing persistent pain throughout her body unrelieved by medication as "flareups." AR 43–45. These flareups occurred randomly and approximately once a week, making it difficult to keep her eyes open and often lasting three days, though they could last for one day to one month. AR 43–44, 45. She testified flareups created such an intense pain she could feel in "every bone in [her] body" including her teeth and toes. AR 45. She explained when the flareup became bad, she "[did not] want to be awake." AR 45. Plaintiff testified "the more [she] move[s], the more it hurts" and "it's hard for [her] to breathe." AR 39, 44.

Plaintiff reported her eight-year-old son stayed with his father because she was not able to take care of him due to her chronic pain. AR 44. She also stated she suffered from a "constant state of being exhausted and tired" requiring her to lie down for approximately four to five hours every day, and she often struggled to complete household chores without assistance from her other children. AR 44, 47. Continuous movements like picking up the phone, keeping her hands on the steering wheel, and using a pencil also hurt. AR 44. Though Plaintiff was able to drive for a short time, she testified she could forget where she was going or would have to pull over if the light hit her eyes or if her hands were hurting. AR 47.

Plaintiff explained her memory had become "really bad" and at times she did not know what she was doing, including "how to answer a phone or where [she was] at." AR 43–44.

In addition, Plaintiff reported experiencing photosensitivity where "get[ting] in just the wrong amount of light in [her] eyes" induced headaches and blurry vision. AR 44.

Plaintiff stated she took Cymbalta twice per day, in addition to Tylenol, Advil, and sleep medications. AR 48. Plaintiff also testified at the time of the hearing, she just started her first session of mental health counseling. AR 49.

## B.    The ALJ's Evaluation

The ALJ summarized Plaintiff's testimony at the March 20, 2024 hearing as follows:

> Her memory is not good. She was hospitalized for COVID-19, and has had lingering effects including brain fog, and difficulty breathing and shortness of breath. She has a lot of pain whenever she moves. She has elevated cholesterol, migraines, and mental issues including PTSD. Her pain is constant and she is constantly tired. Light in her eyes causes headaches. She has fibromyalgia with full body pain, along with weakness and numbness all over. She can drive, but does not drive alone because she forgets locations. She has dysphagia and throat issues.

AR 15.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms" were "not entirely consistent with the medical evidence and other evidence in the record[.]" AR 15. After summarizing the medical evidence in detail, the ALJ concluded:

> Overall, the claimant's mental impairments appear non-severe, with problems related to fibromyalgia, such as overall pain and fatigue, and with respiratory issues connected to post-COVID complications. She had intact strength in exams, and exhibited full range of motion of the musculoskeletal system, including the shoulders, wrists, knees, ankles, and neck.

AR 19.

## C.    Applicable Law

The Ninth Circuit has reaffirmed the two-step analysis for evaluating a claimant's subjective symptom testimony. *Ferguson*, 95 F.4th at 1199. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (quoting *Garrison*, 759 F.3d at 1014). The claimant must only prove the

impairment could reasonably have caused some degree of pain or other symptom; she is not required to prove the impairment reasonably could be expected to cause the severity of the pain or symptoms she has alleged. *Id.* "Further, the claimant is not required to produce objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.* (citation modified).

"If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear and convincing reasons for doing so." *Ferguson*, 95 F.4th at 1199 (quoting *Garrison*, 759 F.3d at 1014–15). "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work[.]" *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "The standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id.* "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson*, 95 F.4th at 1199 (citing *Lingenfelter*, 504 F.3d at 1040).

Neither party contests the ALJ's determination Plaintiff's fibromyalgia, reactive airway disease, or status post-COVID pneumonia were severe impairments. *See* ECF Nos. 14, 16. Neither party alleges Plaintiff was malingering, and the record does not suggest as much. As a result, the Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective statements regarding her symptoms. *See Ferguson*, 95 F.4th at 1199.

**D.    Analysis**

As a preliminary matter, Plaintiff cites *Burch v. Burnhart*, 400 F.3d 676 (9th Cir. 2005), to argue the ALJ erred by providing a "synopsis of the medical records without providing any discussion of the reasons to dismiss [Plaintiff's] testimony." ECF No. 14 at 6.

In *Smartt v. Kijakazi*, the Ninth Circuit recognized *Burch* is sometimes misread as "completely forbidding an ALJ from using inconsistent objective medical evidence in the

24-cv-2223-WQH-MMP

record to discount subjective symptom testimony." *Smartt*, 53 F.4th at 498. The Ninth Circuit clarified *Burch* prohibits an ALJ from "insist[ing] on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise." *Id.* The Ninth Circuit reiterated an ALJ may properly rely on "*contradictions* between a claimant's subjective symptom testimony and the objective medical evidence in the record to discount the symptom testimony." *Id.* at 498 n.1. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Id.* at 498. To satisfy this standard, the ALJ must specify the symptom testimony that is discredited and what facts in the record undermine the testimony. *See Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) ("[W]e require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.").

While Plaintiff contends the ALJ erred by merely summarizing the medical evidence without providing any reason to discount Plaintiff's testimony, the Court reads the ALJ's opinion differently. *See Nadon v. Bisignano*, 145 F.4th 1133, 1137 (9th Cir. 2025). As described in section IV.B. above, the ALJ summarized Plaintiff's testimony about her symptoms and limitations and found Plaintiff's subjective statements were "not entirely consistent with the medical evidence and other evidence in the record[.]" AR 15. The ALJ then identified several inconsistencies between the medical record and Plaintiff's mental and physical symptom testimony. *See Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (reiterating a reviewing court must look "to *all* the pages of the ALJ's decision" in reviewing an ALJ's reasons for discrediting subjective statements). First, the ALJ found Plaintiff's "mental impairments appear non-severe," reasoning the overall record "reflects minimal treatment for mental health issues." AR 19. The ALJ further noted Plaintiff had been "off medication for a long time" but was experiencing "a current life stressor" and

24-cv-2223-WQH-MMP

had general normal mental findings on exam. AR 19–20. Second, with respect to Plaintiff's physical impairments, which the ALJ characterized as "problems related to fibromyalgia, such as overall pain and fatigue, and with respiratory issues connected to post-COVID complications[,]" the ALJ found "[Plaintiff] had intact strength in exams, and exhibited full range of motion of the musculoskeletal system, including the shoulders, wrists, knees, ankles, and neck." AR 19; *see also* AR 20.[5]

Overall, "to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony." *Ferguson*, 95 F.4th at 1200 (citing *Lingenfelter*, 504 F.3d at 1035–38, 1040). Accordingly, the Court must determine whether the two reasons provided by the ALJ satisfy this standard.

### 1.    Minimal Treatment for Mental Health Issues

In discrediting Plaintiff's subjective testimony, the ALJ reasoned the overall record showed minimal treatment for mental health issues. AR 19. The ALJ noted treatment records from September 2023 indicated Plaintiff had been "off medication for a long time, but was having a current life stressor." AR 19 (citing AR 595). The ALJ further accurately summarized the treatment records, including Plaintiff's mental health-related examinations, as follows:

> She had normal memory on exam. She reported memory loss in an exam. She had normal eye contact in exams. She was pleasant on exam. She was engaged and/or interactive. She reported irritability in exams. She was cooperative and/or calm in exams. She exhibited good attention and/or concentration in exams. She was alert and/or oriented/responsive in exams. She was well-groomed in exams.

AR 19–20 (internal citations omitted).

The Ninth Circuit has recognized evidence of minimal or "'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra*

---

[5] Neither party acknowledged nor addressed the ALJ's reasons in their briefing. ECF Nos. 14, 16.

*v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)) (finding treatment of physical ailments with an over-the-counter pain medication was conservative). Although a minimal or "conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)). With respect to mental health impairments specifically, the Ninth Circuit has stated "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Garrison*, 759 F.3d at 1018 n.24 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)). Therefore, a reviewing court should consider whether "the record affords compelling reason to view such departures from prescribed treatment as part of [the plaintiff's] underlying mental afflictions." *Id.*

The ALJ did not error by finding the overall record showed minimal treatment for Plaintiff's mental health issues. In September 2021, Plaintiff had a positive depression screening. AR 505. She described her mood "sad/angry" and reported decreased sleep, feelings of worthlessness, decreased energy levels, difficulty concentrating and focusing, and decreased appetite. AR 502. She identified life stressors including medical conditions, finances, and housing. *Id.* Upon physical examination, Plaintiff was found to be well-groomed and had normal speech rate and volume, goal directed thought process, no abnormalities of thought content, no suicidal or homicidal ideation. AR 503. Plaintiff exhibited full affect, fair insight and judgment, and good attention and concentration. *Id.* Treatment records reflect Plaintiff was "[s]table for outpatient management" and was referred to a behavioral health care management for counseling. AR 504–05. She was also prescribed duloxetine (Cymbalta) 60 mgs twice daily. AR 504.

In April 2022, Plaintiff participated in psychotherapy with Fabiola Del Aguila, PhD, where Plaintiff reported increased symptoms of "irritability, inability to sleep, memory loss, and lack of concentration." AR 602. Plaintiff was found to be "cooperative and

24-cv-2223-WQH-MMP

responsive" with "no signs of urgent distress." *Id.* Although the treatment record notes she was "disoriented in all spheres," the same record states Plaintiff "presented with stable mood overall and was engaged and had a sense of humor" and "was engaged and appeared calmer after the session ended." *Id.* Plaintiff was assessed as having a history of depression and PTSD. *Id.*

The ALJ noted a gap in medical records in evidence for seventeen months, AR 17; thus, there is no evidence in the record of further mental health treatment until September 2023, when Plaintiff treated via telephone with Katilynn Wyatt, NP, requesting to restart on depression medication. AR 595. Plaintiff reported having been off medication for "a while" and had been having a hard time, noting life stressors of recent job loss and housing instability. *Id.* Plaintiff also reported experiencing difficulty sleeping and decreased appetite, though she denied suicidal ideations. *Id.* Plaintiff was observed to be "alert and keenly responsive," had normal speech, and was "speaking in clear and complete sentences." *Id.* The treatment records reflect she was off medication for a long time with "many life stressors currently." *Id.* Plaintiff was instructed to restart 60 mg of Cymbalta daily for the "dual benefit" of depression and fibromyalgia and received a routine referral to behavioral health care management. *Id.*

Treatment records from a January 9, 2024 Rheumatology examination indicate while Plaintiff still reported similar symptoms, she acknowledged "Cymbalta is helping with depression" and, upon a physical exam, was found to be alert, oriented, and grossly intact. AR 679, 681. Treatment records from a follow-up Rheumatology examination on February 20, 2024 noted with respect to Plaintiff's depression, Plaintiff was "already on [C]ymbalta and doing better." AR 671.

In sum, the overall record shows Plaintiff was diagnosed with depression, referred to routine behavior health care management on numerous occasions, and prescribed Cymbalta for her depression. Her examinations showed generally normal mental health findings, with occasional reports of increased irritability, inability to sleep, memory loss, and lack of concentration. The evidence in the record reflects she attended one

24-cv-2223-WQH-MMP

psychotherapy session and restarted Cymbalta when experiencing a current life stressor after being off medication for "a long time." AR 595. The most recent treatment records in evidence indicate Plaintiff acknowledged her depression was "doing better" after restarting Cymbalta. AR 671. Thus, the ALJ did not err by finding the overall record showed Plaintiff had minimal treatment for any mental health symptoms she may have experienced. *See Malloy v. Colvin*, 664 F. App'x 638, 641 (9th Cir. 2016).

The Court also considers whether the record suggests Plaintiff had "a good reason for not seeking more aggressive treatment," *Carmickle*, 533 F.3d at 1162 (citation omitted), and, in particular, Plaintiff's departure from prescribed medication. *See Garrison,* 759 F.3d at 1018 n.24. While there is evidence in the medical record Plaintiff could not tolerate gabapentin prescribed for her fibromyalgia pain because of adverse side effects, AR 552–53, 669, 679, there is no evidence in the record Plaintiff's decision to go off Cymbalta for a long time was a result of adverse side effects or Plaintiff's underlying depression. *See Niemi v. Saul*, 829 F. App'x 831, 832–33 (9th Cir. 2020) (finding the lack of mental health treatment provided a valid reason to discount the plaintiff's subjective testimony where there was no evidence in the record the claimant's decision not to seek treatment for years was a result of her psychiatric issues).

Accordingly, the Court finds the ALJ's discrediting Plaintiff's mental health subjective symptoms because the overall record showed minimal treatment for mental health issues to be specific, clear, and convincing supported by substantial evidence.

### 2.    Inconsistency with the Medical Evidence

The ALJ also discounted Plaintiff's testimony regarding her physical symptoms. *See* AR 19–20. The ALJ identified Plaintiff's subjective symptom testimony as "problems related to fibromyalgia, such as overall pain and fatigue, and with respiratory issues connected to post-COVID complications." AR 19. The ALJ separately identified Plaintiff's testimony that "her pain is constant and she is constantly tired and that light causes her to

17

24-cv-2223-WQH-MMP

have headaches."[6] AR 20. Though the ALJ acknowledged Plaintiff was observed to have "very classic" features of fibromyalgia as well as symptoms consistent with reactive airway disease and respiratory issues post-COVID, the ALJ discounted Plaintiff's symptom testimony as inconsistent with medical evidence showing she "had intact strength in exams, and exhibited full range of motion of the musculoskeletal system, including the shoulders, wrists, knees, ankles, and neck." AR 19, AR 20 (same). The ALJ then cited treatment records from a single rheumatology examination on January 9, 2024 with provider DoQuyen Hoa Huynh, M.D., of UC San Diego Health, Rheumatology, reasoning:

> In a rheumatology exam in early January 2024, the claimant was alert, oriented, and in no apparent distress with generally normal exams. Examination of the shoulders showed no tenderness of the shoulders or bicipital tendons, no swelling, no end-point pain, and full range of motion. The elbows had no rheumatic nodules, no tophi, no warmth, no swelling, and no tenderness. Her wrists demonstrated full range of motion with nor warmth, swelling, synovitis, or tenderness, and the hands had no synovitis, warmth, or swelling. Her knees had normal range of motion with no effusion, and no quad or patella pain, and the ankles has full range of motion with no warmth, swelling, synovitis, and no Achilles tendonitis.

AR 20 (citing AR 678–81).

While Plaintiff ignores the inconsistencies identified by the ALJ, she argues generally "given her testimony regarding her symptoms and the medical records supporting her fibromyalgia diagnosis, it is unclear from the ALJ's decision how [her] testimony is inconsistent with the medical record." ECF No. 14 at 7.

The Ninth Circuit's decision in *Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017), is controlling, though neither party cited it in their briefing. There, the Ninth Circuit explained "the unique symptoms and diagnostic methods" of fibromyalgia and its symptoms as follows:

---

[6] The ALJ appears to have credited Plaintiff's subjective symptom testimony that light causes her to have headaches, as the RFC reflects a specific limitation Plaintiff cannot perform work "in very bright light." AR 15.

24-cv-2223-WQH-MMP

Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Typical symptoms include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue. What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal. Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling. Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain. The condition is diagnosed entirely on the basis of the patients' reports of pain and other symptoms. There are no laboratory tests to confirm the diagnosis

*Revels*, 874 F.3d at 656 (citation modified). In addition, the Ninth Circuit recognized "the symptoms of fibromyalgia 'wax and wane,' and that a person may have 'bad days and good days.'" *Id.* at 657 (quoting SSR 12-2P, at *6).

In evaluating Revels' subjective statements, the Ninth Circuit held the ALJ did not provide clear and convincing reasons to reject Revels' testimony, attributing such errors to "an apparent fundamental misunderstanding of fibromyalgia." *Id.* at 662, 666. During the hearing before the ALJ, Revels testified she was in "extreme pain" all over her body, described her pain as "aching" and "sharp" in her back and wrists, and also described experiencing numbness in her legs. *Id.* at 660–61. The ALJ discredited Revels' testimony regarding her fibromyalgia symptoms as inconsistent with medical records citing "at several doctor's appointments, Revels exhibited normal muscle strength, tone, and stability, as well as a normal range of motion." *Id.* at 666. The Ninth Circuit found the ALJ erred because "the examination results cited by the ALJ are perfectly consistent with debilitating fibromyalgia." *Id.* The Court reasoned "[t]he condition is diagnosed entirely on the basis of patients' reports of pain and other symptoms, and there are no laboratory tests to confirm the diagnosis." *Id.* (citation modified). "Indeed, fibromyalgia is diagnosed, in part, by evidence showing that another condition does not account for a patient's symptoms." *Id.* (citing SSR 12-2P, at *3).

24-cv-2223-WQH-MMP

Here, the ALJ committed a similar error. The ALJ discounted Plaintiff's testimony that she experienced constant pain and fatigue from her fibromyalgia because Plaintiff had intact strength in exams and exhibited full range of motion. AR 19, 20. The Ninth Circuit's decision in *Revels* makes clear normal muscle strength and normal range of motion are not inherently inconsistent with debilitating fibromyalgia; thus, these findings are not a clear and convincing reason for discounting Plaintiff's testimony as to the severity of her fibromyalgia symptoms. *See Revels*, 874 F.3d at 660–61; *see also Smith v. Saul*, 820 F. App'x 582, 584–85 (9th Cir. 2020) ("[T]he fact that Smith retained 'full range of motion' and 'muscle tone' and showed little 'objective evidence' of dysfunction is not a valid reason for discounting her symptom testimony."); *Truong v. Berryhill*, 774 F. App'x 381, 383 (9th Cir. 2019) (reiterating "normal imaging test results, reflexes, gait, muscle strength, sensory functions, and range of motion are not necessarily inconsistent with fibromyalgia-induced disability") (citation omitted). The Ninth Circuit has repeatedly recognized fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms," *Benecke*, 379 F.3d at 590, and "[w]hat is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes [that] are normal." *Revels*, 874 F.3d at 656 (citation modified).

The ALJ's discussion of other observations from a single examination also does not, on their own, amount to clear and convincing reasons to discount Plaintiff's testimony. The Ninth Circuit has emphasized repeatedly "the symptoms of fibromyalgia 'wax and wane,' and a person may have 'bad days and good days" which is "why the Social Security Administration recommends looking at longitudinal records[.]" *Revels*, 874 F.3d at 663 (citing SSR 12-2P at *6). Here, the ALJ relied exclusively on Dr. Huynh's treatment records from January 9, 2024 Rheumatology exam, explaining Plaintiff was "alert, oriented, and in no apparent distress with generally normal exams." AR 20. The ALJ did not explain, and it is unclear to the Court, how Plaintiff being "alert, oriented, and in no apparent distress" on the day of the exam is inherently inconsistent with Plaintiff's allegations she experienced constant pain and fatigue from fibromyalgia. Further, as the

24-cv-2223-WQH-MMP

ALJ acknowledged, in the same January 9, 2024 treatment records, Dr. Huynh assessed Plaintiff as having "very classic features of fibromyalgia," AR 681, and records from a February 20, 2024 rheumatology follow-up visit reflect Dr. Huynh confirmed Plaintiff's fibromyalgia diagnosis, noting Plaintiff presented with fibromyalgia risks including "migraines, depression and IBS symptoms, fog and poor concentration." AR 669, 671. Thus, the ALJ's reliance on the single examination is insufficient to satisfy the clear and convincing standard.

Likewise, the ALJ also cited Dr. Huynh's physical examination finding from the January 9, 2024 examination including no tenderness of the shoulders, bicipital tendons, or wrists. AR 20. Though the ALJ indicated no tenderness was found in the elbow, the medical record states: "Elbow: no rheumatic nodules, no tophi, no warmth swelling, tenderness." AR 681. Regardless, while tender-point examinations constitute "objective medical evidence" of fibromyalgia pursuant to SSR 12-2P, the Ninth Circuit recognized in *Revels* that "[l]acking certain tender points does not rule out fibromyalgia-related symptoms, since a doctor need only find eleven out of eighteen tender points to diagnose the condition." *Revels*, 874 F.3d at 663. Thus, while the lack of tenderness in three areas during the January 9, 2024 exam may be noteworthy, the Court does not find this, on its own, is inherently inconsistent with Plaintiff's claimed symptoms sufficient to satisfy the clear and convincing standard, particularly in light of the clear guidance from the Ninth Circuit as to the fluctuating nature of fibromyalgia symptoms. *See Smith*, 820 F. App'x at 584 ("[B]ecause the symptoms of fibromyalgia wax and wane, and may even be absent on some days, it is no surprise that the examining psychologists who each evaluated Smith on only one occasion did not describe her as appearing in physical pain.") (citation modified); *Estrada v. Saul*, 842 F. App'x 154, 155 (9th Cir. 2021) (remanding for consideration, inter alia, of "how evidence that Estrada at times denied pain comports with the recognition that the symptoms of [fibromyalgia] can wax and wane so that a person may have bad days and good days.") (citation modified).

24-cv-2223-WQH-MMP

The ALJ also noted "[i]t was observed on exam later that month that her symptoms were most consistent with reactive airway disease, and it was noted that she had respiratory issues post-COVID." AR 20. To the extent the ALJ discounted Plaintiff's subjective symptoms from fibromyalgia based on the January 15, 2024 Emergency Department treatment notes, the ALJ's reasoning is not clear and convincing supported by substantial evidence. On January 15, 2024, just four days after treating with Rheumatologist Dr. Huyhn for fibromyalgia, Plaintiff presented to the Emergency Department in the middle of the night with complaints of shortness of breath, headache, and backpain. AR 720. Plaintiff reported chronic back pain and shortness of breath had worsened over the past few days and at night while laying down flat. *Id.* Upon physical exam, no "crackles/wheezing" was observed, and Plaintiff was found in "normal work of breathing" with no respiratory distress, stridor or voice changes, and lungs clear bilaterally. AR 721, 724. The treatment records reflect a differential diagnosis of "postnasal drip versus reactive airway disease versus asthma versus ACS versus pneumonia versus viral etiology versus pulmonary embolism." AR 724. After x-rays and EKGs, it was determined Plaintiff's symptoms of shortness of breath were "most consistent with reactive airway disease." AR 724–25. Plaintiff was not evaluated for fibromyalgia; nor do the records reflect fibromyalgia was considered. *See id.*

Finally, Defendant identifies several other purported inconsistencies between the medical evidence and Plaintiff's testimony—for example, Plaintiff testified she could not work due to "inability to hold onto a steering wheel or a pencil without pain" as inconsistent "with no abnormalities of the joints in the hands or elsewhere." ECF No. 16 at 5–6. Defendant also represents "the ALJ pointed to Plaintiff's demeanor and presentation at the hearing" as a reason to discount her testimony. *Id.* at 7–8 ("[T]he ALJ observed that despite complaints of debilitating brain fog, Plaintiff was able to answer questions and provide explanations without difficulty during the administrative hearing."). The ALJ, however, did not provide either explanation to discount Plaintiff's testimony. *See Garrison*, 759 F.3d at 1010 ("[Courts] review only the reasons provided by the ALJ in the disability

24-cv-2223-WQH-MMP

determination and may not affirm the ALJ on a ground upon which he did not rely."); *Brown-Hunter*, 806 F.3d at 492 ("[Courts] are constrained to review the reasons the ALJ asserts.").

## V.  REMAND

The Court must still affirm "if the error is harmless." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015). An error is considered harmless when it is "inconsequential to the ultimate nondisability determination." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Tommasetti*, 533 F.3d at 1038).

The Court finds the ALJ's discrediting of Plaintiff's testimony as to her fibromyalgia symptoms without clear and convincing reasons supported by substantial evidence was not harmless. *See Ferguson*, 95 F.4th at 1199 ("However, substantial evidence does not support an ALJ's RFC assessment if 'the ALJ improperly rejected [the claimant's] testimony as to the severity of his pain and symptoms.'") (quoting *Lingenfelter*, 504. F.3d at 1035). Thus, the Court has discretion to either remand for further proceedings before the ALJ or for an award of benefits. *Garrison*, 759 F.3d at 1019. Where "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Id.* (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)); *see also Revels*, 874 F.3d at 668. The Court finds additional proceedings to clarify the ALJ's analysis may remedy the defects and finds remand for further administrative proceedings is appropriate.

## VI.  CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge William Q. Hayes under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(a) of the United States District Court for the Southern District of California. For the reasons set forth above, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order:

1.    **APPROVING** and **ADOPTING** this Report and Recommendation;

2.    **REVERSING** the Commissioner's decision, and

//

3.    **REMANDING** the matter for further administrative proceedings consistent with this opinion.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **February 17, 2026**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later **March 3, 2026**.

**IT IS SO ORDERED**.

Dated:  January 31, 2026

_____
HON. MICHELLE M. PETTIT
United States Magistrate Judge

24

24-cv-2223-WQH-MMP